**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

CIVIL ACTION
NO: 15-10686-LTS

IN THE MATTER OF
GORDON E. PARRY, JR., as Owner of
2003 Chaparral Signature 280 cabin cruiser,
MS-2594-AJ, HIN-FGBA0331F203,
for Exoneration from or Limitation of Liability

**CLAIMANT/THIRD-PARTY DEFENDANT, 3A MARINE SERVICE, INC.'S,
MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT**

Now comes Claimant/Third-Party Defendant, 3A Marine Service, Inc. ("3A Marine") in the above captioned matter, by and through its undersigned counsel, Clinton & Muzyka, P.C., and submits its Memorandum of Law in Support of its Motion for Summary Judgment seeking dismissal of the Plaintiff's First Amended Third-Party Claim.

**FACTS**

On or about April 29, 2014, Plaintiff, Gordon E. Parry, ("Parry") faxed a two-page form, entitled "2014 Spring Commissioning Checklist" to 3A Marine, which detailed the commissioning services that he requested to be performed on his 2003 Chaparral Signature 280 cabin cruiser (the "Vessel") before the 2014 boating season.  See *pages 105 through 112 and Exhibit 8 from Plaintiff's deposition within Exhibit A, which is attached to 3A Marine's Statement of Undisputed Material Facts*.

After August 2, 2014, Parry paid 3A Marine's service Invoice No. 7767 in full in the amount of $6,123.71 without complaint.  See *pages 124; 151 -152 and Exhibit 9 from Plaintiff's deposition within Exhibit A*.

On Sunday, August 24, 2014, Parry was the owner and operator of the Vessel when an explosion and fire occurred onboard the Vessel while it was located within Provincetown Harbor, Massachusetts (the "Incident").  See *Docket Entry No. 1*.

After 3A Marine commissioned Parry's Vessel and before the Incident occurred on August 24, 2014, Parry operated the Vessel on different occasions, including trips between its mooring at the Savin Hill Yacht Club in Dorchester, Massachusetts and Provincetown, Massachusetts.[1]  See *pages 90 through 93 from Plaintiff's deposition within Exhibit A*.

While operating the Vessel during the trips between Savin Hill Yacht Club and Provincetown and before the Incident, Parry stated that the Vessel was *"running the best it's run in a long time"*.  See *pages 92 through 93 and pages 154-155 from Plaintiff's deposition within Exhibit A*.

3A Marine did not perform any work or service on the Vessel after July 25, 2014.  See *pages 153 through 155 from Plaintiff's deposition within Exhibit A and pages 97 through 98 from Patrick Desmond's deposition within Exhibit B, which is attached to 3A Marine's Statement of Undisputed Material Facts*.

Following the Vessel's spring commissioning, Parry operated the Vessel on several occasions after July 25, 2014, but Parry never complained to 3A Marine about any issue, including the smell of gasoline onboard the Vessel or the Vessel's engines

---

[1]  **The distance between Savin Hill Yacht Club in Boston to Provincetown Harbor is approximately 49 nautical miles.**

running roughly or improperly. See *pages 153 through 155 from Plaintiff's deposition within Exhibit A*.

On Saturday, August 23, 2014, the day before the Incident, Parry operated the Vessel's engines for thirty (30) minutes without issues or problems.  See *pages 183 through 186 from Plaintiff's deposition attached hereto within Exhibit A*.

During the weekend of August 23 through August 24, 2014, Parry did not smell any gasoline while onboard the Vessel. See *pages 154 and 185 from Plaintiff's deposition attached hereto within Exhibit A.*

Claimant, David Lundmark ("Lundmark"), a passenger onboard the Vessel at the time of the Incident, alleges that he sustained personal injuries as a result of the Incident. See *Docket Entry No. 17*.

On October 14, 2014, fire cause and origin investigators, including Steven Sundquist ("Sundquist") representing Parry's interests, Michael Higgins ("Higgins") representing 3A Marine's interests, and Michael Hennessy ("Hennessy") representing Lundmark's interests, and an investigator from the Massachusetts Environmental Police, Sergeant John Girvalakis ("Girvalakis"), conducted a joint inspection of the Vessel's wreck while it was stored at Bay Sails Marine in Wellfleet, Massachusetts.  See *pages 35 through 38, pages 138 through 141, and Exhibit 2C from Sergeant Girvalakis' deposition within Exhibit C, which is attached to 3A Marine's Statement of Undisputed Material Facts*.

On March 5, 2015, Parry filed a Verified Complaint pursuant to the Limitation of Shipowner's Liability Act of 1851, 46 U.S.C. §§ 30501 through 30512, and Supplemental Rule F of the Federal Rules of Civil Procedure.  See *Docket Entry No. 1*.

On May 26, 2015, Lundmark filed his Claim and Answer demanding a Jury Trial. See *Docket Entry No. 17*.

On August 20, 2015, Parry filed a First Amended Third-Party Claim against 3A Marine seeking to recover damages under six (6) Counts allegedly arising out of the Incident. See *Docket Entry No. 38*.

Within Parry's First Amended Third-Party Claim, he alleges that

> "any breach of applicable statutes or regulations, or any unseaworthiness, fault, neglect, or lack of reasonable care by or on the part of the Vessel or Parry that might have contributed to any and all alleged injuries, damages, and losses were occasioned and incurred without the privity or knowledge of Parry and/or were occasioned and incurred due to the fault of third-parties (including 3A Marine) for which Parry is not responsible."

See *Docket Entry No. 38 ¶25*.

On September 3, 2015, 3A Marine filed its Claim, its Answer to Parry's First Amended Third-Party Claim, and a Counterclaim seeking Indemnity at Law and Contribution from Parry. See *Docket Entry Nos. 39 and 40*.

On September 23, 2015, Parry filed his Answer to 3A Marine's Counterclaim. See *Docket Entry No. 42*.

On January 20, 2017, Girvalakis testified at his deposition while reviewing his investigative report, marked as Exhibit 2C, as follows:

> Q. When you write "I cannot rule out the possibility of a maintenance mishap at this time," what do you mean?
>
> A. I mean boats just don't spontaneously explode. ... So, in order for a boat to explode, you have to have some type of -- you have to have fuel, you have to have heat, you have to have oxygen, and in this case, you had to have some type of an explosive atmosphere in the rate mixture, ratio between fuel vapors and/or oxygen. It's a balance. If you have too rich an environment, you don't have combustion. If you have too lean an environment, you don't have combustion. What I'm saying is there was some type of a fuel issue in

> *here in which they had an explosive environment created which ultimately caused the explosion and fire. Whether that's some type of maintenance issue, you know, maintaining the boat, working on the boat, changing filters on the boat, something to do with the fuel system on the boat, I can't be certain, and I can't direct you to a specific cause because the nature of the fire was so intense that a lot of items were burned, and heat significantly can distort things. And like I said, heat is the best type of wrench you can get. It will loosen up all types of stuff. That's not to say that a fitting was put on incorrectly or something was put on incorrectly to allow that to escape. Certainly, that could be the case as well. I can't give you a definitive answer.*

> Q. *So, your investigation didn't reveal that any of the fittings were not tightened by someone who serviced the engines?*

> MR. McALEER: *Objection.*

> A. *Again, I can't definitively come out with that. I can tell you the origin of the fire was the engine compartment.*

> Q. *So, when you say I cannot rule out the possibility of a mishap at this time, you're saying, forgive me, but so I understand, you don't know whether the maintenance had an impact on it or it didn't, fair?*

> MR. McALEER: *Objection.*

> A. *I can't say -- well, again, boats just don't spontaneously explode. Something would have had to have occurred to allow that explosive environment.*

> Q. *But you don't know what that specific something is, sir?*

> MR. McALEER: *Objection.*

> A. *No, I don't.*

> Q. *And your investigation didn't reveal that, did it?*

> A. *No. It did not.*

See *pages 131 through 134 and Exhibit 2C from Sergeant Girvalakis' deposition within Exhibit C.*

At his deposition on January 20, 2017, Girvalakis further testified as follows:

> Q. *Following this forensic analysis in October of 2014, did you receive any additional information from any source with respect to the cause of the fire on Mr. Parry's vessel on August 24, 2014?*

> A. *I don't recall so, no, no. Unless I articulate it in another page, which doesn't exist, no.*
>
> …
>
> Q. *And did you ever find any further evidence or testimony to justify reexamining the incident or anything that was discovered during your investigation?*
>
> *No. Nothing has ever been brought forward or to my attention regarding this incident post that examination of the remnants of the vessel.*

See *pages 140 through 141 from Sergeant Girvalakis' deposition within Exhibit C.*

At his deposition on January 23, 2018, Parry's fire cause and origin expert, Sundquist, classified the cause of the explosion and fire onboard the Vessel on August 24, 2014 as *"undetermined"* because *"the exact cause of the fuel leak from the pressurized fuel system of the engines was not identified."* See *page 160 from Sundquist's deposition within Exhibit D, which is attached to 3A Marine's Statement of Undisputed Material Facts*.

At his deposition on January 23, 2018, Sundquist also testified, *"[a]s I highlighted in my report, I don't know where the leak occurred."* See *page 140 from Sundquist's deposition within Exhibit D.*

At his deposition on January 25, 2018, 3A Marine's fire cause and origin expert, Higgins, testified that "NFPA said it should be classified as undetermined … [b]ecause you don't have an exact cause. You're using scientific method and all that goes along with it. There is nothing predetermined. I mean, it's all speculation on everybody's part exactly what's going on here. We can tell a lot of things that did not happen, things that didn't happen, but we don't know what did happen exactly. See *pages 156-157 from*

*Higgins' deposition within Exhibit E, which is attached to 3A Marine's Statement of Undisputed Material Facts*.

**ARGUMENT**

**A. Standard of Review**

"Summary judgment's role is to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." *Wynne v. Tufts Univ. Sch. of Med.*, 976 F.2d 791, 794 (1st Cir. 1992). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no issue as to any material fact, and that the pleading party is entitled to judgment as a matter of law." *Barbour v. Dynamics Research Corp.*, 63 F.3d 32, 36-37 (1st Cir. 1995). Fed. R. Civ. P. 56(c) "mandates the entry of summary judgment...against the party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and, on which that party will bear the burden of proof at trial." *Celotex Corp., v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548 (1986). For the purposes of summary judgment, the Court views the record in the light most favorable to the non-moving party. *McCarthy v. Northwest Airlines, Inc.* 56 F.3d. 313, 315 (1st Cir. 1995). "To prevail, the moving party must show 'that there is no genuine dispute as to any material fact' and that it 'is entitled to judgment as a matter of law.'" *Sun Capital Partners III, LP v. New England Teamsters & Trucking Indus. Pension Fund*, 724 F.3d 129, 138 (1st Cir. 2013) *cert. denied,* 134 S. Ct. 1492, 188 L. Ed. 2d 388 (2014). "The U.S. Supreme Court defines material facts as 'those that might affect the outcome of the suit under governing law,' and a dispute over

a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Smith v. United States Dep't of Justice*, 987 F. Supp. 2d 43, 46 (D.D.C. 2013) quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In a light most favorable to Parry, this Court should properly find that when Parry fails to make a showing sufficient to establish the existence of an element essential to his case (causation), and on which he bears the burden of proof at trial and 3A Marine shows 'that there is no genuine dispute as to any material fact', then 3A Marine is entitled to judgment as a matter of law.

B. **No genuine issues of material fact exist that the proximate or legal cause of the subject explosion and fire is undetermined and therefore, parry cannot meet his evidentiary burden of proof on causation at trial.**

Parry has failed to adduce and present any specific and admissible evidence as to causation of the subject explosion and fire nor any act or omission attributable to 3A Marine and its commissioning of Parry's Vessel for the 2014 boating season. See *Fairest-Knight v. Marine World Distributors*, Inc., 652 F.3d 94, 99-102 (1st Cir. 2011); *Penn Mar., Inc. v. Rhodes Elec. Servs., Inc.*, 41 F. Supp. 3d 507, 516 (E.D. La. 2014), *as corrected* (Sept. 19, 2014); *Stetler v. Vaello Shipyard, Inc., et al.,* 1975 A.M.C. 2681; *Williams v. Techtronic Indus. of N. Am., Inc.*, 600 F. App'x 1 (1st Cir. 2015) (Court of Appeals affirming grant of summary judgment due to failure to prove causation of the subject fire.)

At his deposition on January 23, 2018, Parry's fire cause and origin expert, Sundquist, classified the cause of the explosion and fire onboard the Vessel on August

24, 2014 as *"undetermined"* because *"the exact cause of the fuel leak from the pressurized fuel system of the engines was not identified."* He also testified, *"[a]s I highlighted in my report, I don't know where the leak occurred."*

At his deposition on January 25, 2018, 3A Marine's fire cause and origin expert, Higgins, testified that "NFPA said it should be classified as undetermined … [b]ecause you don't have an exact cause."

Lastly and on January 20, 2017, the investigator from the Massachusetts Environmental Police, Sergeant John Girvalakis testified at his deposition, as follows:

> Q. So, your investigation didn't reveal that any of the fittings were not tightened by someone who serviced the engines?
>
> MR. McALEER: Objection.
>
> A. Again, I can't definitively come out with that. I can tell you the origin of the fire was the engine compartment.
>
> Q. So, when you say I cannot rule out the possibility of a mishap at this time, you're saying, forgive me, but so I understand, you don't know whether the maintenance had an impact on it or it didn't, fair?
>
> MR. McALEER: Objection.
>
> A. I can't say -- well, again, boats just don't spontaneously explode. Something would have had to have occurred to allow that explosive environment.
>
> Q. But you don't know what that specific something is, sir?
>
> MR. McALEER: Objection.
>
> A. No, I don't.
>
> Q. And your investigation didn't reveal that, did it?
>
> A. No. It did not.

There is no specific and admissible evidence as to causation of the subject explosion and fire and there is no specific and admissible evidence as to any act or omission attributable to 3A Marine during its commissioning of Parry's Vessel for the 2014 boating season.

Accordingly, this Honorable Court should enter Summary Judgment for 3A Marine and dismiss Parry's First Amended Third-Party Claim. Parry is unable to meet his burden of proof on the essential element that any acts or omissions attributable to 3A Marine caused the subject explosion and fire.

**C. No genuine issue of material fact exists concerning 3A Marine fulfilling its contractual and implied warranty obligations to Parry in its completion of the Vessel's 2014 spring commissioning.**

On or about April 29, 2014, Parry forwarded a completed 2014 "Spring Commissioning Checklist" to 3A Marine. Thereafter, 3A Marine performed the service and commissioning of the Vessel for the 2014 boating season. After taking delivery of the Vessel and operating it, Parry paid 3A Marine's service Invoice No. 7767 in full and without complaint. Following the Vessel's 2014 commissioning, Parry operated the Vessel on several occasions, including voyages back and forth from Savin Hill Yacht Club and Provincetown, for some four (4) weeks before the Incident. During these trips, Parry never smelled gasoline fumes while onboard the Vessel. Furthermore, Parry never complained to 3A Marine concerning any issues or problems after July 25, 2014.

Accordingly, the requisite evidence to establish that 3A Marine's alleged acts or omissions caused the subject explosion and fire is wholly *absent*.

Performance of vessel maintenance work or the lack thereof is reviewed under tenets of the Federal General Maritime Law. See *Fairest-Knight* at 98 (citing *La*

*Esperanza de P.R., Inc. v. Pérez y Cía. de P.R.,* 124 F.3d 10, 16 (1st Cir.1997)). 3A Marine met its contractual obligations to commission the Vessel in the Spring of 2014. Every maritime service contract contains an implied warranty of workmanlike performance. *Selame Associates, Inc. v. Holiday Inns, Inc.,* 451 F.Supp. 412, 419 (D.Mass.1978). There is no evidence that 3A Marine breached its contractual duty to Parry in performing its vessel commissioning services or that it breached its implied warranty to perform the services in a workmanlike manner. Parry's unwitnessed and smooth operation of the Vessel's engines for thirty (30) minutes on the morning of Saturday, August 23, 2014, the day before the subject explosion and fire, unequivocally refutes any claim that 3A Marine improperly serviced the Vessel during the Vessel's commissioning in the Spring of 2014.

In addition, Parry repeatedly testified at his deposition that the Vessel was *"running the best it's run in a long time"* before the Incident occurred. "… [T]he implied warranty does not go so far as to "impos[e] strict liability." *Fairest-Knight* at 99. "... [E]ven claims of unseaworthiness, which *do* "impose a strict liability regime upon shipowners, … require the plaintiff to show that the defendant's conduct was the proximate cause of his injury." *Id.* (quoting *Napier v. F/V DEESIE, Inc.,* 454 F.3d 61, 68 (1st Cir.2006)). A claim for breach of the implied warranty must prove that any alleged breach caused the injury or damages. *Id.* Causation [for the breach] must be established by a preponderance of the evidence. *Id.* (citing *Marquette Trans. Co., Inc. v. La. Mach. Co., Inc.,* 367 F.3d 398, 402 (5th Cir.2004)). Again, Parry never complained to 3A Marine concerning any issues or problems after July 25, 2014.

Accordingly, Parry's testimony concerning the Vessel's "best" performance for days and weeks after its commissioning coupled with the lack of any reported problems with the Vessel's engines or fuel system before the Incident refutes Parry's allegations that 3A Marine breach the implied warranty of workmanlike performance.

Parry's retained cause and origin expert, Steven Sundquist ("Sundquist"), fails to proffer any substantiated evidence that 3A Marine failed to properly service or repair the Vessel. In fact, both Sundquist and 3A Marine's fire cause and origin expert, Michael Higgins, classify the cause of the subject explosion and fire as undetermined.[2] Causation under general maritime negligence law is similar to the common law which requires but for causation coupled with proximate or legal causation. The fault must not only be a "but-for" cause, but the fault which produces liability must be contributory and proximate cause of the injury. To give rise to liability, a culpable act or omission must have been a substantial and material factor in causing the injury. *Great American Ins. Co. v. Pride*, 847 F.Supp.2d 191, 204 (D. Me. 2012). Here, the Parties' experts agree that gasoline vapor ignited within the Vessel's engine compartment, but the source of the gasoline and vapor is undetermined. "In marine repair or servicing cases, the identity of the party in control or possession of the vessel at the time of the incident is a factor to consider when determining whether circumstantial evidence of negligence or causation is sufficient." *Penn Mar., Inc.* at 517 (E.D. La. 2014), *as corrected* (Sept. 19, 2014). Here, Parry was in control and possession of the Vessel, but yet he failed to meet the requisite evidentiary burden on the element of causation by identifying the source of the gasoline vapor.

---

[2] The National Fire Protection Association, NFPA 921, Guide for Fire & Explosion Investigation defines an "Undetermined Fire Cause" as "whenever the cause cannot be proven to an acceptable level of certainty, the proper classification is undetermined."

Therefore, the experts classified the cause of the explosion and fire as *"undetermined"*.

Accordingly, this Honorable Court should enter Summary Judgment for 3A Marine and dismiss Plaintiff's First Amended Third-Party Claim.

**D. No genuine issues of material fact exist concerning Plaintiff's ownership of the Vessel and his contractual relationship with 3A Marine to commission the Vessel for the 2014 boating season and therefore, Parry's negligence claims seeking recovery for the loss of his Vessel is barred as a matter of law.**

Parry's claims of Negligence (Count II) and Gross Negligence (Count III) against 3A Marine are unrecoverable as a matter of law under the General Maritime Law's Economic Loss Rule.  This Rule precludes causes of action in tort, whether stated in negligence or strict liability, seeking recovery for the alleged defective product [the Vessel] where only purely economic losses are sustained.  The preferred rationale is that such claims are properly brought as a warranty claim rather than in tort. *Isla Nena Air Servs., Inc. v. Cessna Aircraft Co.*, 380 F. Supp. 2d 74, 81 (D.P.R. 2005), *aff'd,* 449 F.3d 85 (1st Cir. 2006).  Parry cannot recover for the economic losses associated with the alleged defective product [the Vessel]. *Id.* (citing *East River Steamship v. Transamerica Delaval, Inc.,* 476 U.S. 858, 874 (1986)).

In *East River*, the Supreme Court established the "Economic Loss Rule," under the General Maritime Law, which was created to prevent contractual remedies from "drown[ing] in a sea of tort." *Id.* at 866. The Rule was created in a products liability context and precluded a products liability remedy in tort when the injury was to nothing more than the product itself. *Id.* at 874-75. In so doing, the Supreme Court held that the more appropriate remedy was for breach of contract or warranty:

> Contract law, and the law of warranty in particular, is well suited to commercial controversies of the sort involved in

> this case because the parties may set the terms of their own agreements. The manufacturer can restrict its liability, within limits, by disclaiming warranties or limiting remedies. . . . In exchange, the purchaser pays less for the product. Since a commercial situation generally does not involve large disparities in bargaining power . . . , we see no reason to intrude into the parties' allocation of the risk.

*Id.* at 872–73 (citing *Henningsen v. Bloomfield Motors, Inc.,* 32 N.J. 358, 161 A.2d 69 (1960)). Accordingly, Parry's claims against 3A Marine for Negligence (Count II) and Gross Negligence (Count III) should properly fail as a matter of law and Summary Judgment should be entered in favor of 3A Marine on Counts II and III of Plaintiff's First Amended Third-Party Claim to the extent that they seek recovery for loss of Plaintiff's Vessel.

**WHEREFORE,** the Defendant, Claimant/Third-Party Defendant, 3A Marine Service, Inc., prays that this Honorable Court grant its Motion for Summary Judgment seeking dismissal of Plaintiff's First Amended Third-Party Claim because Plaintiff fails to meet the requisite evidentiary burden on the element of causation.

Respectfully submitted,
By its attorneys,

**"/s/ Thomas J. Muzyka"**
**Thomas J. Muzyka**
**B.B.O. No. 365540**
**Terence G. Kenneally**
**B.B.O. No. 642124**
**CLINTON & MUZYKA P.C.**
88 Black Falcon Avenue
Suite 200
Boston, MA 02210
Tel:   (617) 723-9165
Fax:   (617) 720-3489
Email: tmuzyka@clinmuzyka.com

## CERTIFICATE OF SERVICE

      Pursuant to ***Local Rule 5.2***, I hereby certify that the above document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on February 23, 2018**.**

                                      **"/s/ Thomas J. Muzyka"**
                                      **Thomas J. Muzyka**